CHARLES J. SCHUCK, Judge.
On the 11th day of October 1941, the claimant, a resident of McConnelsviUe, Ohio, became a passenger with one Louise Abel, of the same place, in an automobile owned by the father of the said Louise Abel, and later the two ladies were joined by one Jack Henniger at Beverly, Ohio, and Gordon Lockhart, and between twelve-thirty and one o’clock on that night, the four persons started in the said automobile from Beverly, Ohio, to Marietta, Ohio, and later went to Parkers-burg, West Virginia, the said claimant Mildred Mattis riding in the front seat with Lockhart, who was driving the car. It appears from the evdence that the said four persons were simply out for a ride, were somewhat unacquainted with Parkersburg, and had reached the said city between two-thirty and three o’clock on the morning of October 12; that in some manner not fully explained by the evidence, except that they were then hunting for a restaurant or place to eat, they eventually got to the outskirts of Parkersburg and while traveling on East street at and near the railroad viaduct crossing said street and near the bridge over the Little Kanawha river, the machine in question, while being driven by the said Lockhart, collided with one of the piers or pillars on the said viaduct, causing serious damages to the claimant and the wrecking of the automobile in which they were then passengers.
Claimant contends that the accident was caused by the condition of said East street; that the said street was in bad repair; that the streetcar tracks thereon were separated from the traveling lane by an elevation of cement work or barrier *33 near the said viaduct which was highly dangerous to any automobilists using the highway in question, and that although driving at a moderate speed, the said automobile, in passing off the side street onto the said East street, and around or back of another automobile parked near the intersection of Jeanette and East streets, apparently struck a rut in the said street, causing the machine to become and be beyond the control of the driver and bringing about the collision in question.
Claimant maintains that at the time of the collision or just shortly before, the car was being driven at a moderate rate of speed, to wit, twenty-five or thirty miles per hour (record p. 96). However, the witness Stemple, who was the automobile repairman, testified (record p. 152) that “The front end of the car was hit about the center, the motor and steering wheel was driven back into the front seat, the front seat was tore loose and drove up against the dash, the seats were all tore loose, the drive shaft had bent the jumbo housing back until it knocked the gas tank off.” The same witness testifying further says, as to the speed of the car at the time of the collision, “I would say not less than thirty miles an hour, approximately maybe 40-45.” That the car was driven at a high rate of speed, in fact at an excessive rate, is evidenced by the extent of the injuries which left the car almost beyond repair and a hopeless wreck so far as rebuilding it was concerned, the testimony being that the car would require repairs to the extent of $490.00 to be put in the condition it was previous to the time of the accident.
The lights on the viaduct were undoubtedly burning, as testified to by the witness Baker (record p. 156) who was employed in a garage near the place of the accident and was on duty at the time it took place, and was at the scene shortly afterward and noticed the red lights in question burning. He referred specifically to the red lights as being on the pillars of the viaduct. This witness also testifies (record p. 156) -vthat the accident took place about three-thirty in the morning and that the locality where the accident took place is *34 one of the suburbs in the outlying districts of Parkersburg. The testimony further shows that the said red or warning lights coul'd be seen at a distance of approximately 185 feet when entering East street from the nearest cross street to the said viaduct, and for over 400 feet when entering East street from the other cross street beyond and paraKel to Jeanette street. The evidence also shows that the weather was good and that there was no interference with visibility.
Under all the circumstances, notwithstanding the serious injuries to the claimant, we cannot say that the state is liable for the accident in question or for the damages which the claimant has sustained. In the first place, the state is not an absolute insurer to those using the highway. They still have a duty incumbent upon them to use such care as is necessary under all the attendant circumstances to prevent injuries to themselves. Seemingly ample lights were fixed on the viaduct in question to give warning of the presence and location of the said viaduct and its supporting pillars; and these lights could be seen at least 185 feet away from the viaduct, assuming that the claimant and those riding with her in the machine had passed onto East street from the nearest intersecting street, namely Jeanette. If they did not pass onto East street from Jeanette street, then they could have seen the lights if they had been watching and had been careful on a strange highway, in a strange city, and in an outlying district, at' least 400 feet away from the viaduct. The evidence aliso shows that the said viaduct was lighted underneath,' seemingly with ample lights. Are we justified in assuming that the claimant and her companions were seeking a place to obtain food at three or three-thirty o’clock on the morning of the accident, when the very fact that they had passed through the heart of Parkersburg, as testified to by them, would have afforded ample opportunity for them to have obtained food, and in fact, with more likelihood of having their wants fulfilled than by driving into the outskirts of the city of Parkersburg? The reason given may or may not have been the true one that prompted the journey to East street. The evidence does not disclose that the claim *35 ant protested in any manner to the driver’s handling of the car, nor does it appear that she or the other occupants of the automobile observed the lights on the viaduct when entering East street shortly before the accident took place. If the automobile had been driven with the necessary and required care and caution when entering East street, it could in our opinion, have been brought to a stop before colliding with the viaduct. It may be true, as the testimony shows, that the street in question was not in the best of repair, but we feel that this fact was not the proximate cause of the accident or the injuries to the claimant.
Our conclusion is that the proximate cause of the injuries was the highly negligent manner in which the car was being operated just previous to and at the time of the accident, and the failure on the part of all of the occupants of the car, including the claimant, to exercise that degree of care necessary under the circumstances for her protection and safety. The negligence of the driver was, under the circumstances, her negligence, and consequently, their combined acts constituted the proximate cause of the accident of which she now complains. Giving full consideration to the testimony, and appreciating the fact that the claimant has been severely injured, we cannot, however, find that the state or the state road commission was at fault, and therefore deny the claim.
Under the foregoing decision it is unnecessary, of course, to give consideration to the plea of want of jurisdiction heretofore filed by the state.